568 P.2d 193

**Monteine BAIRD, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**No. 11400.**

Supreme Court of New Mexico.

Aug. 23, 1977.

Rehearing Denied Sept. 7, 1977.

Anthony F. Avallone, Las Cruces, for petitioner.

Toney Anaya, Atty. Gen., Santa Fe, for respondent.

## OPINION

FEDERICI, Justice.

Defendant was indicted by the Lincoln County Grand Jury for murder in the second degree in violation of § 40A–2–1(B), N.M.S.A.1953 (2d Repl.Vol. 6, 1972). Defendant refused to plead and the trial court entered a plea of not guilty on her behalf.

Before proceeding to selection of a jury, defendant filed a motion to dismiss the indictment and the trial court denied the motion. Directly thereafter, defendant entered into a Plea and Disposition Agreement with the district attorney's office. Under this agreement the charge against defendant was reduced to involuntary manslaughter. Defendant pleaded no contest to involuntary manslaughter. The court approved the agreement and defendant was found guilty of involuntary manslaughter by the trial court. Defendant appealed this conviction, and the judgment of the trial court was affirmed by the Court of Appeals. We affirm the decision of the Court of Appeals.

Defendant asserts that her plea and subsequent conviction should be set aside because of asserted improprieties in the grand jury proceedings which led to her indictment.

Foremost among defendant's assertions is that the district attorney was present in the grand jury room during the grand jury's deliberations. This allegation is made in the defendant's docketing statement in the Court of Appeals and in her petition for certiorari before this court, and appears to be admitted by the state in its brief. Two important issues are raised by the facts presented. The first is whether the presence of the district attorney in the grand jury room during the grand jury's delibera-

tions would, if properly raised in the trial court and preserved as an issue for appeal, be sufficient to require that the indictment against defendant be invalidated. The second is whether defendant's claims of impropriety in the grand jury proceedings may be waived by the plea negotiation process, the subsequent entry of a plea of no contest, and the conviction and sentence of the court based upon that plea bargain and plea.

The presence of the district attorney during deliberations of the grand jury is specifically and unequivocally prohibited by law. Section 41–5–4, N.M.S.A.1953 (2d Repl.Vol. 6, 1972) provides, insofar as applicable: "All deliberations will be conducted in a private room outside the hearing or presence of any person other than the grand jury members."

This statute is clear and is not subject to construction. *No one* other than the grand jury members may be present during the time the grand jury is deliberating. Like other statutes governing grand jury proceedings, it is to be rigorously observed and strictly enforced. *State v. Hill,* 88 N.M. 216, 539 P.2d 236 (Ct.App.1975). *Cf. Davis v. Traub,* 90 N.M. 498, 565 P.2d 1015 (1977).

It is most important that the secrecy of the grand jury be maintained. For centuries grand jury sessions have been surrounded by a cloak of seclusion and secrecy that has been jealously guarded and preserved as the only means of insuring that the jury be permitted the freedom of action necessary for a vigorous and effective discharge of its duties.

The reasons for this ancient policy are many. Among them are: promoting freedom in the disclosure of crime; preventing coercion of grand jurors through outside influences and intimidation, thus allowing a freedom of deliberation and expressions of opinion which would otherwise be impossible; prohibiting the safety and anonimity of witnesses, thus encouraging the greatest possible latitude in their voluntary testimony; preventing forewarning to those whose criminal conduct has been uncovered; and protecting the good names of persons considered by the grand jury but not indicted.

A further consideration calling for preservation of the secrecy which surrounds the grand jury is the limited rights of an accused so far as that body is concerned. Under normal circumstances, the accused has no right to appear before that body, with or without counsel. Since he has no right concerning the grand jury except that it be duly impaneled and conducted according to law, his right in this respect should be rigorously protected. *State v. Revere,* 232 La. 184, 94 So.2d 25 (1957).

The grand jury is our system's foundation for the protection of individual rights. It is also a powerful tool of the public and of American Society. It is a recognized method by which the public can be certain of protection against abuse of public responsibilities. The cloak of secrecy which has for centuries surrounded its sessions is designed to protect not only the jurors and witnesses, but to safeguard as well the interests of the state, the accused, and society as a whole. Attempts to modify, circumvent or even eliminate the grand jury system by legislative act or constitutional amendment will be forestalled only by rigorous observation and enforcement of the laws which govern it.

The question next arises whether, notwithstanding the improprieties in the grand jury proceedings asserted by defendant, she has waived her objections based upon them by entering into a Plea and Disposition Agreement which was approved and accepted by the trial court through a plea of no contest to the charge of involuntary manslaughter. We hold that defendant has waived her objections to the grand jury proceedings.

Defendant contends that the defects of the grand jury proceedings were so fundamental that they cannot be waived. We do not agree. Fundamental constitutional rights may be waived by a defendant. *Neller v. State,* 79 N.M. 528, 445 P.2d 949

(1968); *State v. Montoya*, 81 N.M. 233, 465 P.2d 290 (Ct.App.1970); *State v. Gonzales*, 80 N.M. 168, 452 P.2d 696 (Ct.App.1969). Likewise, violations of rights created by statute may also be waived.

A finding of waiver in this case has two sources. First is the Plea and Disposition Agreement, which was signed by defendant and defense counsel. By this plea bargain, defendant obtained dismissal of the murder charge and defendant agreed to plead no contest to involuntary manslaughter. Paragraph 4 of the plea bargain agreement provides as follows:

> 4. Unless this plea is rejected or withdrawn, that the defendant hereby gives up any and all motions, defenses, objections or requests which he has made or raised, or could assert hereafter, to be the court's entry of judgment against him and imposition of sentence upon him consistent with this agreement.

■ The judgment states that the plea bargain agreement had been approved by the trial court in accordance with Rule 21 of the Rules of Procedure. Defendant was represented by counsel throughout the plea negotiation process. Plea negotiation involves an exchange of concessions and advantages between the state and the accused. Erickson, The Finality of a Guilty Plea, 48 Notre Dame Lawyer 835, 839 (1973). In this case, the concession granted by the defendant in paragraph 4 of the plea agreement operated as a waiver of the objections raised in this appeal.

■ Second, the plea of no contest itself operated as a waiver of defendant's right to object to the claimed statutory defects in the grand jury proceedings. *State v. Raburn*, 76 N.M. 681, 417 P.2d 813 (1966). There is no claim that the no contest plea was involuntarily made or made with other than full awareness on the part of the defendant.

The judgment of the Court of Appeals is affirmed.

IT IS SO ORDERED.

McMANUS, C. J., and SOSA, EASLEY and PAYNE, JJ., concur.